IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

OCT 2 0 2008

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | |
|---|---|
| RGOI ASC, LTD. § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. M-07-194 |
| § | |
| HUMANA INSURANCE COMPANY § | |
| § | |
| Defendant. § | |

## OPINION & ORDER

BE IT REMEMBERED that on October 20, 2008, the Court considered Plaintiff RGOI ASC, LTD.'s Motion for Summary Judgment, Dkt. No. 20, Defendant Humana Insurance Company's Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment and Brief in Support, Dkt. No. 22, Plaintiff's Response to Humana Insurance Company's Motion to Dismiss and/or Motion for Summary Judgment, Dkt. No. 26, and Defendant's Response to Plaintiff's Motion for Summary Judgment. Dkt. No. 27. Accordingly, this Court **GRANTS IN PART** Defendant's Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment and **DISMISSES** all of Plaintiff's causes of action in its Original Petition. This Court **DENIES** Defendant's Motion for Summary Judgment on its ERISA preemption defense. This Court also **DENIES** Plaintiff's Motion for Summary Judgment, in accordance with the discussion below.

RGOI ASC, LTD. ("RGOI") filed suit in state court against Humana Insurance Company ("Humana") for allegedly failing to pay for medical services provided to nine people insured by Humana. Dkt. No. 1, Ex. No. 4, at 3-5. Both parties have moved for judgment. Plaintiff argues that Defendant's past reimbursement practices for other patients treated by Plaintiff acted as representations. Dkt No. 20, at 4. Plaintiff alleges that when Defendant changed its billing practices without notice to Plaintiff, Defendant's silence created a material misrepresentation which gave rise to statutory and common law liability

in tort and in quasi-contract. *Id.* Plaintiff argues that summary judgment is warranted because there is no issue of material fact, and as a matter of law, Defendant's conduct created liability for intentional misrepresentation, damages under the Texas Deceptive Trade Practices Act, and treble damages for Defendant's knowing and intentional conduct under the Texas Insurance Code. *Id.* at 5.

Defendant, on the other hand, argues that a majority of Plaintiff's state law claims are barred by Federal ERISA preemption. Dkt. No. 22, at 5. Defendant argues that Plaintiff has not identified any representations made by Defendant that would create liability for its failure to pay all the sums Plaintiff seeks. *Id.* at 5-6. Defendant argues that Plaintiff only expected to be paid benefits due to subscribers under the plan and therefore cannot recover under a theory of quantum meruit. *Id.* Finally, Defendant argues that Plaintiff does not have standing to sue under the DTPA and the Insurance Code because it is neither a consumer under the DTPA nor a person entitled to complain under the Insurance Code. *Id.* at 7.

## I.   Factual Background

The undisputed facts are that Plaintiff RGOI is an ambulatory surgery center focused primarily on arthroscopic treatment of knee and shoulder injuries. Dkt. No. 1, Ex. No. 4, at 2. Plaintiff is an out-of-network, non-contracting medical service provider which has no contract or agreement with Defendant Humana, a health insurance provider, or any other insurance company as to what it would be reimbursed for any services provided. Dkt. No. 20, at 1-2. Plaintiff is not told prior to treating patients the exact amount it will be reimbursed. *Id.* Prior to October 2006, Defendant paid Plaintiff between 90-100% of all charges submitted by Plaintiff. *Id.* at 2-3. Defendant made no written or oral statements agreeing to pay certain amounts on the claims submitted by Plaintiff. *Id.* at 3. The Defendant's policy with its subscribers controlled the amount that non-contractual service providers would be reimbursed. The policies provided that the expenses would be paid based upon a calculation of maximum allowable fees. Dkt No. 20, Ex. 1, at 3-4. Maximum allowable fees could be calculated based on one of six different formulas. *Id.* Prior to the change, the Defendant lacked a database of ambulatory surgery centers from which to

derive comparison rates at other similar surgery centers–one of the methodologies under the maximum allowable fee clause. *Id.* Beginning in late 2006, Defendant implemented a new database tracking what other ambulatory surgery centers were charging for similar services, and its payment practices changed. Dkt No. 20, at 1-2. The Defendant began reimbursing significantly less than it ever had on claims submitted by Plaintiff.[1] *Id.* The terms of Defendant's written policies with its subscribers did not change and Defendant never provided notice of the changes in payment practices to the Plaintiff prior to declining to reimburse the Plaintiff's claims under the old methodology. *Id.* at 4. Nine of Defendant's subscribers were treated by Plaintiff after the change. The difference between what Plaintiff sought as reimbursement and what Defendant reimbursed totaled $162,592. *Id.* Five of the nine patients have plans subject to the Employee Retirement Income Security Act ("ERISA"). Dkt. No. 22, at 3.

## II.   Procedural Background

Plaintiff brought suit in state court on June 13, 2007 alleging state law causes of action for recovery of the amounts it believed it should have been reimbursed under theories of quantum meruit, common law misrepresentation, damages under the DTPA and three separate causes of action under Section 21 of the Texas Insurance Code. Dkt. No. 1, Ex. No. 4, at 3-5. This case was removed to federal court on July 18, 2007. Dkt. No. 1. On May 20, 2008, this case was reassigned to the Brownsville division, where it remains. Dkt. No. 38.

Plaintiff seeks summary judgment on Defendant's affirmative defense of ERISA preemption. Dkt. No. 27, at 3. Plaintiff also seeks summary judgment on two of its six causes of actions, misrepresentation and violation of the DTPA. *Id.* Finally, Plaintiff seeks summary judgment on its damages claim. *Id.* Defendant seeks judgment on the pleadings or alternatively summary judgment against Plaintiff on all six causes of action as well as summary judgment in favor of its affirmative defense of ERISA preemption. *Id.*

---

[1] Defendant reimbursed Plaintiff less than $1,000.00 on each patient's claims, each of which was at least $16,000.00. Dkt. No. 20, at 17-18.

## III. Standard

*A. Summary Judgment*

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994). Thus, the Court will not, *"in the absence of proof, assume that the nonmoving party could or would prove the necessary facts."* *Id.* (emphasis in original) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)); see also TIG Ins. Co. v. Eagle, Inc., Civ. Action No. 05-0179, 2007 WL 861153, at *2 (E.D. La. 2007) (quoting *Little*, 36 F.3d at 1075).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists. See *Lockett*, 337 F. Supp. 2d at 891 (citing Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)). Thus, a Court may not grant summary judgment simply because there has been no opposition to the motion. Hibernia Nat'l Bank v. Admin. Cental Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing John v. Louisiana (Bd. of Trustees for State Colleges and Universities), 757 F.2d 698, 709 (5th Cir. 1985)). If the movant fails to meet its initial burden, the nonmovant is not required to respond to the motion. *John*, 757 F.2d at 708. However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337

F. Supp. 2d at 891; *see also Ashe*, 992 F.2d at 543. The nonmovant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

B. Judgment on the Pleadings

For a motion for Judgment on the Pleadings under 12(c), the standard is the same as for dismissal for failure to state a claim under Rule 12(b)(6). Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F. 3d 305, 312 (5th Cir. 2002). The Court accepts the complaint's well-pleaded facts as true and views them in the light most favorable to the non-movant. *Id.* at 312-13. The motion to dismiss should not be granted unless the Plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint. *Id.* at 313.

IV.   Analysis

A.   ERISA preemption

Congress enacted ERISA as a comprehensive system to regulate employee benefit plans. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). ERISA contains a preemption clause which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has held that Congress' intent was for the ERISA preemption clause to be interpreted in the broadest possible manner. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987). ERISA preemption applies not only to state laws but to all forms

of state action dealing with the subject matters covered by the statute. 29 U.S.C. § 1144(c)(1). Accordingly, when a suit alleges a state common-law or statutory cause of action relating to an ERISA plan, the suit may be preempted in favor of federal law. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-67 (1987). However, the Supreme Court has cautioned that some state action may be too remote or peripheral from the ERISA benefit plans to warrant a finding that the action relates to the plan. Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983). Therefore, ERISA preempts any state law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy. Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004). The Fifth Circuit has held that ERISA preempts any cause of action that either addresses an area of exclusive federal concern such as the right to benefits under the plan or that directly affects the relationship between the employer, the plan and its fiduciaries, and the participants and beneficiaries. Hubbard v. Blue Cross & Blue Shield Ass'n, 42 F.3d 942, 945 (5th Cir. 1995).

Plaintiff asserts that its state law causes of action are not preempted by ERISA when brought by independent, third party health care providers, like the Plaintiff. Dkt. No. 20, at 8. Plaintiff argues that court interpretation of the ERISA preemption has progressively narrowed the preemption. Id. at 8-9. Plaintiff cites the decision in Memorial Hospital System v. Northbrook Life Ins. Co., 904 F.2d 236, 238 (5th Cir. 1990), which refused to invoke ERISA preemption on a statutory misrepresentation claim. There, the hospital sued the insurance company for improperly denying benefits after representing to the hospital that the patient was covered when he was not. Id. Defendant, on the other hand, argues that Plaintiff merely seeks to challenge the Defendant's decision as to the extent of its subscriber benefits under the ERISA plans. Dkt. No. 20, at 8-9. Defendant distinguishes Memorial on the grounds that the payments to the Plaintiff were not representations as Plaintiff argues, and thus this lawsuit is simply a challenge to Defendant's denial of benefits. Id.

Neither party disputes that five of the nine claims are covered under employee welfare benefit plans as defined by 29 U.S.C. § 1002(1). Meredith v. Time Ins. Co., 980 F.2d 352, 355 (5th Cir. 1993). However, ERISA does not preempt claims that are not dependent on or derivative of a beneficiary's right to recover under an ERISA plan.

Transitional Hospitals Corp. v. Blue Cross & Blue Shield of Tex., Inc., 164 F.3d 952, 955 (5th Cir. 1999); Saint Luke's Episcopal Hospital Corp. v. Stevens Transport, Inc., 172 F. Supp. 2d 837, 841 (S.D. Tex 2000). Here, the Plaintiff's claims are independent from the Defendant's decision as to coverage. The Plaintiff is not attempting to stand in the shoes of its patients to collect benefits promised to the Defendant's subscribers. The Plaintiff's claims rely on the theory that misrepresentations were made from the Defendant to the Plaintiff, not to the patients. Defendant argues that Plaintiff's claims should be barred by the ERISA preemption because the claims all rely on proving misrepresentations that do not exist and thus are not truly separate claims but rather derivative attacks on benefit determinations. Dkt. No. 27, at 6. But the deciding factor is the analysis, not the result. Plaintiff's claims all require an analysis of what, if any, misrepresentations were made, rather than an analysis of benefit determinations, and therefore are not barred. Furthermore, in its role as a health care provider, the Plaintiff is not party to any health insurance plan formed under ERISA. Therefore, Plaintiff has no relationship with the Defendant that would be governed by ERISA. The Plaintiff does not address an area of exclusive federal concern but rather attempts to bring suit to make the Defendant pay in accordance with a contract the Defendant has with its subscribers. The Plaintiff's causes of action have no effect on the relationship between the traditional ERISA entities of health plan and subscribers. Neither party claims that this suit will prevent beneficiaries from receiving benefits or change beneficiaries' entitlement to benefits. Therefore, this Court denies Defendant's defense of ERISA preemption.

B. Misrepresentation

Having found that none of Plaintiff's claims are barred by the ERISA preemption, this Court now considers whether either party has presented evidence sufficient to grant summary judgment or judgment on the pleadings. Other than Plaintiff's quantum meruit claim, all of Plaintiff's claims require a finding that Defendant misrepresented its subscriber's benefits to Plaintiff. Dkt. No. 20, at 10. Therefore, this Court will consider that issue first.

In Texas, fraud occurs when: (1) the defendant misrepresented a material fact; (2) the defendant knew the material representation was false or made it recklessly without any

knowledge of its truth; (3) the defendant made the false material representation with the intent that it should be acted upon by the plaintiff; and (4) the plaintiff justifiably relied on the representation and thereby suffered injury. United Teachers Associates Ins. Co. v. Union Labor Life Ins. Co., 414 F. 3d 558 (5th Cir. 2005); Ernst & Young, 51 S.W.3d at 577. A misrepresentation need not be an oral or written statement. The first requirement of this test can be met if the defendant failed to disclose a material fact when a duty to disclose existed. New Process Steel Corp v. Steel Corp. of Texas, Inc., 703 S.W.2d 209, 214 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Texas courts have differed as to the circumstances that may create a duty to disclose. The Fifth Circuit has held previously that the Texas Supreme Court intended to create a duty to disclose only in a fiduciary or confidential relationship. See Bradford v. Vento, 48 S.W.3d 749, 755-56 (Tex. 2001); Coburn Supply Co., Inc. v. Kohler Co., 342 F.3d 372 (5th Cir. 2003). However, the Fifth Circuit and Texas courts have not been consistent. Other courts have held that the duty exists when one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue and where one makes a partial disclosure and conveys a false impression. See United Teachers, 414 F.3d at 566; Samedan Oil Corp v. Intrastate Gas Gathering, Inc. 78 S.W.3d 425, 425 (Tex. App.–Tyler 2001).

Furthermore, Texas courts have held that health insurers do not have a duty to disclose to ERISA plan members the details of their physician compensation and reimbursement schemes to plan members. Ehlmann v. Kaiser Foundation Health Plan of Tex., 198 F.3d 552, 554-55 (5th Cir. 2000). The Fifth Circuit held in Ehlmann that although the insurer was a fiduciary for its subscribers, absent a specific inquiry by the subscriber, no duty to disclose existed. Id. at 556. Plaintiff is seeking to have this court impose a stricter duty to disclose between a health plan and a out-of-network service provider than the Fifth Circuit has held exists between the plan and its subscribers, to which it is a fiduciary. But not only was the Defendant not a fiduciary to the Plaintiff, the parties did not even have a written contract between them. It would be inconsistent to hold that a greater duty exists between a health care plan and a non-contractual provider of services than between the plan and the subscribers to which it is a fiduciary. Fortunately, this Court need not reach that issue because Defendant's previous reimbursements cannot be

characterized as representations that create misrepresent a material fact.

Based on the uncontroverted facts, this Court finds as a matter of law that Defendant is entitled to summary judgment on all of Plaintiff's misrepresentation claims.[2] Though a duty to disclose may exist outside a fiduciary or confidential relationship, courts have been circumspect in its interpretation of misrepresentations occurring in arm's length business dealings. In Springs Window Fashions Div., Inc. v. Blind Maker, Inc., 184 S.W.3d 840, 877 (Tex App.–Austin 2006, rev. granted), the court held that the defendant licensor's previous waiver of a contract clause imposing limitations on a discount did not create misrepresentations, where the existence of the condition was repeatedly disclosed to the plaintiff licensee.[3] In Springs Window, the licensee relied upon a previous year's marketing plan. Id. The plan provided that it could be modified to reflect business conditions, and the licensee never inquired about whether the incentives at issue were permanent. Id. The court held that under the Texas Supreme Court's decision in Bradford, the licensee could not rely purely on this "unexpressed, subjective understanding as a basis for fraud." Id. Here, Plaintiff seeks to have this court interpret previous reimbursement decisions as representations about future decisions. However, the terms of the Defendant's maximum allowable fee clause made clear that independent determinations would be made of each claim to determine the amount of reimbursement. Dkt. No. 20, Ex. A, at 3. Plaintiff was aware of the clause which allowed for Defendant to calculate its reimbursement rates according to a regional or national database of what other providers were charging. Id. As in Springs Window, given the clear language of the subscriber's certificate of insurance

---

[2]Defendant cites to a case where a court held that prior payment of insurance benefits did not guarantee future payments. Matney v. The Hartford Life Ins. Co., 2004 WL 3187081 *13 (N.D. Tex. 2004). However, Matney addressed a completely different situation. In that case, a beneficiary of a disability insurance plan had her benefits revoked when she failed to provide required documentation of her illness. That case and this one are too different to draw meaningful analogies between the two.

[3]Springs Window is also one of the few Texas cases analyzing whether silence over the course of a business relationship can be the basis for fraud by nondisclosure (as the Plaintiff asserts in this case), rather than silence within the scope of a single transaction.

providing for the various means of calculating the maximum allowable fee as the lesser of multiple options, this Court holds that Defendant's previous reimbursement decisions were not representations.

Even if previous reimbursement decisions were representations, Plaintiff's claims would still fail. Plaintiff cannot prove fraudulent intent. Texas courts have consistently held that, although the misrepresentation element of a fraud claim can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose, fraud by nondisclosure or concealment requires proof of all of the other elements of fraud by affirmative misrepresentation, including fraudulent intent. Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex. 1997). Intent is determined at the time the representation was made, and it may be inferred from subsequent acts. Kelly v. Rio Grande Computerland Group, 128 S.2. 3d 759 (Tex. App. El Paso 2004). The Texas Business and Comerce Code § 17.45 defines intentionally as "actual awareness of the falsity, deception, or unfairness of the act or practice" when "coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception."

Plaintiff asserts its claims in its own right rather than as an assignee of its patients. Therefore, we must analyze the relationship that RGOI had with Humana rather than Humana's relationship with its subscribers. Here, however, the Plaintiff has not alleged nor presented any evidence that would, if true, constitute proof of an affirmative misrepresentation that would show Defendant intended to defraud it. In fact, the Plaintiff has presented no evidence that the Defendant actively sought any services from the Plaintiff for its subscribers. There was no contractual relationship between the parties and the Defendant was an out-of-network provider. The Plaintiff cannot show the Defendant fraudulently sought Plaintiff's medical services for its subscribers at less than adequate compensation.

Because this Court's finding that misrepresentations were not made by the Defendant is dispositive of all of Plaintiff's claims except its quantum meruit claim, it is not necessary to address arguments regarding the DTPA or the Texas Insurance Code.

*C. Quantum Meruit*

Defendant seeks judgment for failure to state a claim on which relief can be granted for Plaintiff's quantum meruit claim. Defendant argues that because Plaintiff is a non-contractual provider, Defendant did not receive valuable services from Plaintiff or alternatively there is no evidence that the Defendant received valuable services from the Plaintiff. Dkt No. 22, at 6. Defendant argues that Plaintiff could only expect to receive from Defendant the amount it chose to reimburse its subscribers, and therefore nothing more is due. *Id.* at 5-6. Plaintiff responds that Defendant, as a plan provider, received the benefit of the services that were performed to its subscribers. Dkt No. 26, at 6. Plaintiff argues that the relationship between the provider and the plan makes it clear that the plan is receiving the value of the services, because the plan is the one who pays the money. *Id.* at 6-7.

Quantum meruit claims require that: (1) valuable services or materials are furnished; (2) to the Defendant; (3) who accepts those services; (4) under circumstances that reasonably notify the defendant that the plaintiff expected to be paid for those services. *City of Houston v. Swinerton Builders, Inc.* 233 S.W.3d 4, *10 (Tex. App.–Houston [1st Dist.] 2007, no pet.). A party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Vortt Exploration Co., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Recovery in quantum meruit will be available when non-payment for the services would "result in an unjust enrichment to the party benefitted by the work." *Id.*

This Court holds that Plaintiff's Original Petition is insufficient to support a claim for quantum meruit. The petition indisputably makes allegations to support that the plaintiff furnished valuable services to the Defendant's subscribers. The Defendant does not dispute that Plaintiff actually performed the services it billed and that those services were sufficient to satisfy the needs of its subscribers. However, the Petition does not indicate that any valuable services were provided to the Defendant. Plaintiff's Original Petition alleges that "when RGOI does the work, it will receive payment." Dkt No. 1, Ex. 4, at 5. However, the Plaintiff does not provide "the work" to the Defendant, but rather to the Defendant's subscribers. All benefit payments from the Defendant for services rendered

by a non-network provider like the Plaintiff were due to the subscriber, not the Plaintiff. Dkt. No. 26, Ex. 1, at 1. Similarly, Plaintiff's contract to provide medical services is not with the Defendant, but with its patients. Absent an allegation in the pleadings that the Plaintiff received value from the services the Plaintiff provided to the Defendant's subscribers, the Plaintiff has failed to state a claim upon which relief can be granted. The Plaintiff would not be entitled to relief under any set of facts that it could prove consistent with the complaint. Therefore, this Court holds that the Defendant has met its burden, and dismisses the Plaintiff's quantum meruit claim.

*D. Damages*

Because this Court has not awarded summary judgment to Plaintiff on any of its causes of action, it need not consider whether Plaintiff is entitled to summary judgment on its damages.

**V.     Conclusion**

Therefore, this court **GRANTS IN PART** Defendant's Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment and Brief in Support. Dkt. No. 22. This Court **DENIES** Defendant's ERISA preemption affirmative defense but **GRANTS** Defendant's request for summary judgment on Plaintiff's claims. This Court **DENIES** Plaintiff's Motion for Summary Judgment, Dkt. No. 20. Consequently, this Court **DISMISSES** all of Plaintiff's causes of action and **ORDERS** the clerk to close this case.

DONE at Brownsville, Texas, this 20 day of October, 2008.

Hilda G. Tagle
United States District Judge